**Brandy ELLIS, a minor, by her next friend, Barbara ELLIS, Appellants,**

v.

**Walt PATTERSON, in his official capacity as Director of the Arkansas Department of Human Services, and the Arkansas Department of Human Services, Appellees.**

No. 88–2213.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 18, 1988.

Decided Sept. 26, 1988.

Marilyn Rauch, Little Rock, Ark., for appellants.

Debby Nye, Little Rock, Ark., for appellees.

Before ARNOLD, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Brandy Ellis brought this suit in order to get a determination that the Arkansas Medicaid plan must pay for her liver transplant. The District Court[1] denied her relief, holding that Congress left to the states the choice of whether to include organ transplants in their Medicaid plans.[2] We affirm the District Court on this issue; the State of Arkansas is not required to fund organ transplants under Medicaid. However, since the filing of this suit, the State has decided to modify its Medicaid plan to provide funding for some additional kinds of organ transplants, including liver transplants.[3] Whether this plan amendment will comply with the Medicaid statute may involve questions of fact, best addressed by a trial court. Thus, we remand this case to the District Court for further proceedings consistent with this opinion.

### I.

Brandy Ellis is a ten-month-old baby girl who suffers from a fatal liver condition, biliary atresia. If she receives a liver transplant, she has a 90% chance to live an active and normal life for the next five years.[4] If she does not, then, in the opinion of her physician, Brandy Ellis will die in less than two months. The tragic facts of her medical condition are not in dispute.

Brandy was evaluated at the University of Nebraska Medical Center and determined to be a medically appropriate candidate for a liver transplant. However, before the University will add her to the list of patients waiting for livers to become available, it requires either a $110,000 deposit, or assurance of sufficient insurance to cover the procedure.

Plaintiff receives Supplemental Security Income as a disabled child, and is therefore

---

1. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. On August 13, 1988, the writer of this opinion, acting as a single Circuit Judge under Fed.R. App.P. 8, granted the plaintiff an injunction pending appeal. That injunction directed the State to give the University of Nebraska Medical Center, where plaintiff has been evaluated for a transplant, the assurance of payment it requires to keep her on the list of patients waiting for transplants. The order gave the State the alternative of providing assurances to some other hospital, if it could find one with a more reasonable price. An August 18 per curiam opinion by this panel continued the injunction in effect. For reasons stated later on in this opinion, the injunction will remain in effect until such time as the State's proposed liver-transplant plan has been fully considered by the District Court on remand.

3. The State's plan already covers kidney and cornea transplants.

4. No statistics are available for liver transplant survival rates beyond five years.

entitled to Medicaid from the Arkansas Department of Human Services. However, the Department does not now provide for the funding of liver transplants under its Medicaid program (though, as we have noted, it has announced its intention to do so). A local fund drive raised only $3,000, and plaintiff has no health insurance other than Medicaid. Thus, unless the Department provides assurance of adequate insurance, the University of Nebraska Medical Center will not place Brandy Ellis on the waiting list for a liver transplant.

## II.

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, better known as Medicaid, is a federal-state cooperative program designed to provide medical assistance to indigents. Under the program, the states devise their own medical-assistance plans, which are funded in part by the federal government. A state is not required to participate in Medicaid, but once it elects to do so, it must establish a state plan that comports with federal statutory and regulatory requirements. 42 U.S.C. § 1396a.

Section 1396d(a)(1)–(5) requires participating states to provide in-patient hospital services, out-patient hospital services, other laboratory and x-ray services, skilled nursing facilities, and physicians' services. Relying on language in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977),[5] courts have held that Medicaid must fund these services whenever they are "medically necessary." See, *e.g., Pinneke v. Preisser*, 623 F.2d 546, 548 n. 2 (8th Cir.1980); *Lee v. Page*, No. 86–1081 CIV–J–14 (M.D. Fla.1986); *Allen v. Mansour*, 681 F.Supp. 1232 (E.D.Mich.1986); *Simpson v. Wilson*, 480 F.Supp. 97, 101 (D.Vt.1979). The extent of medical assistance provided by the state for each service must be "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). In addition, "[t]he Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service ... to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." *Id.* at § 440.230(c).

The plaintiff contends that because the State of Arkansas must, in general, provide necessary in-patient services and cannot discriminate among Medicaid recipients on the basis of their diagnoses or illnesses, the State must fund organ transplants, including the liver transplant she desperately needs. To do otherwise would be to deny her a medically necessary service on the basis of her illness. In support of her position she notes this Court has held that "a state plan absolutely excluding the only available treatment ... for a particular condition must be considered an arbitrary denial of benefits based solely on the 'diagnosis, type of illness, or condition.'" *Pinneke v. Preisser, supra* at 549. This Court has also held that states may restrict the medical assistance they offer based on the degree of medical need, but not on the type of medical disorder. *Hodgson v. Board of County Comm'rs*, 614 F.2d 601, 610–11 (8th Cir.1980). One court has modified a state's Medicaid plan to cover liver transplants after applying these principles. In *Lee v. Page, supra*, the Court rejected the state's fiscal arguments and ruled that Florida Medicaid must fund liver transplants where medically necessary.

This line of analysis is appropriate in the usual case where a state denies a necessary medical service to a Medicaid recipient based on that person's diagnosis. However, as the State aptly observes, organ transplants are a special situation. In 1985 and again in 1987 Congress amended the Medicaid statute to add a section governing payments for organ transplants. 42 U.S.C.

---

**5.** The Court stated

"[a]lthough serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund *unnecessary*—though perhaps desirable—medical services." *Id.* at 444–45, 97 S.Ct. at 2371 (emphasis in original).

§ 1396b(i).[6] The statute itself can be read as merely laying out additional standards the states must meet to receive federal funds for organ transplants, but the legislative history of the provision reveals that Congress intended the states to have discretion whether to include organ transplants in their Medicaid plans. The House Report on the provision states:

> To assure that State coverage decisions for organ transplants are based on clear principles consistently applied, and not on political or media considerations, section 9507 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), P.L. 99–272, requires that *a State which covers organ transplant procedures* set forth under its Medicaid plan written standards respecting the coverage of such procedures. Under these standards, similarly situated individuals must be treated alike.

H.R.Rep. No. 100–391(I), p. 532, *reprinted in* 1987 Code Cong. & Admin.News at 2313–1, 2313–352 (emphasis added). Further, the Conference Report states:

> (e) *Organ Transplant Technical—States which choose to cover organ transplant procedures* may restrict the facilities or practitioners from whom Medicaid beneficiaries may obtain the services, so long as the restrictions are consistent with accessibility of high quality care, and so long as similarly situated individuals are treated alike.

H.R.Conf.Rep. No. 100–495, p. 756, *reprinted in* 1987 U.S.Code Cong. & Admin. News at 2313–1502 (emphasis added). The argument that § 1396b(i) gives states the option to exclude organ transplants was apparently not presented to the Florida District Court in *Lee*, and plaintiff's only response to it is that if Congress had meant to give the states the option to exclude organ transplants from Medicaid, it could have done so more directly.

We do not find this rebuttal persuasive. A Conference Report is a strong indicator of what Congress intended, and the one cited quite plainly shows that Congress believed the states could choose not to fund organ transplants. Allowing the states some discretion in the funding of medical procedures is, after all, consistent with the policy behind the Medicaid Act: federal appropriations are "[f]or the purpose of enabling each State, *as far as practicable under the conditions in such State,*" to furnish medical assistance to the needy. 42 U.S.C. § 1396. Other limitations on medically necessary services, such as the number of physician visits, *Curtis v. Taylor*, 625 F.2d 645 (5th Cir.1980), or in-hospital days, *Charleston Memorial Hosp. v. Conrad*, 693 F.2d 324 (4th Cir.1982), have been permitted as reasonable. And we think plaintiff's position that all organ transplants (including hearts and lungs) must be covered by Medicaid is unrealistic. Surely Congress did not intend to require the states to provide funds for exotic surgeries which, while they might be the individual patient's only hope for survival, would also have a small chance of success and carry an enormous price tag. Medicaid was not designed to fund risky, unproven procedures, but to provide the largest number of necessary medical services to the greatest number of needy people. Thus, we hold the State of Arkansas is not required to fund organ transplants under Medicaid, and that it may choose which kinds of organ transplants, if any, to cover.

### III.

This holding (on which we agree with the District Court) does not end Bran-

---

**6.** 42 U.S.C. § 1396b(i) provides in pertinent part:

> Payment under the preceding provisions of this section shall not be made—
> (1) for organ transplant procedures unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that—
> (A) similarly situated individuals are treated alike; and
> (B) any restriction on the facilities or practitioners which may provide such procedures is consistent with the accessibility of high quality care to individuals eligible for the procedures under the State plan ...
> Nothing in paragraph (1) shall be construed as permitting a State to provide services under its plan under this subchapter that are not reasonable in amount, duration, and scope to achieve their purpose.

dy Ellis's case, however. The situation has changed dramatically since plaintiff filed her suit. The State has now decided to modify its Medicaid plan to provide funding for some additional organ transplants, including liver transplants. We expect the State will proceed with the formulation, approval, and adoption of the announced plan with all practicable speed. Counsel so stated at oral argument. But we cannot assume that the plan adopted will be adequate in practice to provide a Medicaid recipient with an organ transplant. For example, a ceiling on transplant funding so low as to prevent a patient from getting on a hospital waiting list—let alone actually pay for the surgery—would in fact deprive her of a transplant. To deny services arbitrarily and unreasonably to an otherwise eligible Medicaid recipient in this manner would be impermissible. See *Montoya v. Johnston,* 654 F.Supp. 511, 514 (W.D.Tex. 1987). There are some medical procedures, such as transplants, which Medicaid participation does not obligate the states to provide. However, once these optional services are undertaken, they must be reasonably funded. See, *e.g., Montoya, supra; Meyers v. Reagan,* 776 F.2d 241 (8th Cir. 1985). Thus, we remand this case to the District Court with directions to review the modified plan when it comes out and to ascertain whether it actually makes possible the transplants which it is intended to provide. The plan must, in the words of Section 1396b(i), be sufficient to provide services reasonable in amount, scope, and duration to achieve their purpose.

The injunction put in place on August 13 will remain in effect until review of the State's plan is completed. The reasons for continuing the injunction are compelling. Brandy Ellis's interest is obviously great— her life is at stake. The State's interest in avoiding interim injunctive relief is slight by comparison. It has already decided to cover liver transplants. If its plan, as ultimately formulated, is held to comply with the Medicaid statute, it will have lost nothing, unless, in the meantime, Brandy's operation takes place and has to be paid for. And in that case, the State's loss will only be the extent to which (if at all) what it has

actually paid out for Brandy exceeds what its plan provides for. The amount of such loss (if there is one) is entirely speculative at this point.

The judgment of the District Court is accordingly vacated, and the case is remanded for further proceedings consistent with this opinion.