996 F.2d 723
 Medicare & Medicaid Guide P 41,496
Natalia PEREIRA, By Her Next Friends, Carlos and Lourdes
PEREIRA, Plaintiff-Appellee,
and
The Children's Transplant Association, Plaintiff,
v.
Bruce U. KOZLOWSKI, Director of the Department of Medical
Assistance Services of the State of Virginia,
Defendant-Appellant.
 No. 92-2529.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 1, 1993.
Decided June 24, 1993.
 
 Pamela Malone Reed, Asst. Atty. Gen., Richmond, VA, argued (Stephen D. Rosenthal, Acting Atty. Gen. of Va., Roger L. Chaffe, Senior Asst. Atty. Gen., on the brief), for defendant-appellant.
 E. Clarke Dummit, American Law Offices, P.C., Winston-Salem, NC, argued, for plaintiff-appellee.
 Before PHILLIPS, HAMILTON, and LUTTIG, Circuit Judges.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Through her parents as next friends, a three-year old child with terminal cardiac dysfunction brought suit seeking to compel the Virginia Department of Medical Services, which administers the Virginia Medicaid Program, to pay for a medically necessary heart transplant. After the district court entered an order enjoining the Commonwealth to fund the operation, 805 F.Supp. 361 (1992) this court denied a stay pending appeal, and the operation was successfully performed. Conscious of our limited role to interpret the law as enacted by Congress, we now affirm.
 
 I.
 
 2
 The facts of this case are simple and not in dispute. Without a heart transplant, Natalia Pereira would have died. A qualified Medicaid recipient, she sought coverage for the operation under that program. Under the Medicaid Act, 42 U.S.C. § 1396 et seq., states devise medical assistance plans, which are then funded in part by the federal government. Although not required to participate in Medicaid, once a state elects to do so, its plan must comport with federal requirements. Among these requirements is the provision of at least seven types of services. See id. § 1396a(a)(10)(A). The Commonwealth concedes that absent exception in the Act, Pereira's heart transplant would be covered as one of those services.
 
 
 3
 The Commonwealth finds such an exception in section 1396b(i)(1) of Title 42, which provides that the federal government will contribute no part of the cost of organ transplant procedures "unless the State plan provides for written standards respecting the coverage of such procedures...." The Commonwealth reads this language as an affirmative grant to the states of complete discretionary authority over which, if any, transplants they will cover. It contends that the states are to evidence their decisions by providing written standards only for those transplants for which they will provide payment. Because Virginia has provided written standards for kidney and cornea transplants only, it refused Pereira's request for coverage of the costs associated with her heart transplant.
 
 
 4
 Pereira brought suit claiming that the Commonwealth's refusal to fund heart transplants for children under twenty-one years of age violates the express terms of sections 1396d(a)(4)(B) and (r)(5) of the Medicaid Act. The former section provides that states must provide "early and periodic screening, diagnostic, and treatment services ["EPSDT"] ... for individuals who are eligible under the plan and are under the age of 21." The latter section defines EPSDT in part as "necessary health care, diagnostic services, treatment, and other measures described in [42 U.S.C. § 1396d(a) ] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."
 
 
 5
 The district court embraced Pereira's argument. See J.A. at 91 ("The language of 42 U.S.C. § 1396d(r) makes all medically necessary treatment which is permissible under the Medicaid Act mandatory for participants under age 21 and explicitly does so regardless of whether such services are included in the State plan in question."). Exercising our plenary review over summary judgment dispositions, we affirm, but for reasons different from those relied upon by the district court.
 
 II.
 
 6
 The Commonwealth conceded at argument, and we assume for purposes of this opinion, that EPSDT encompasses the type of medically necessary heart transplant at issue here and that, absent some saving provision, it would be required to fund Pereira's operation. We conclude that section 1396b(i)(1) of Title 42, the only section relied upon by the Commonwealth, does not represent such a provision.
 
 A.
 
 7
 The district court apparently agreed with the Commonwealth's contention that in section 1396b(i)(1) Congress conferred upon the states absolute discretion to determine whether to cover transplants, and if any coverage is provided, which transplants to fund. See J.A. at 92. The district court held, however, that section 1396d(r)(5), enacted after section 1396b(i)(1), essentially revoked that discretion as to transplants for children under twenty-one years of age. See id. ("Section 1396d(r), however, unambiguously removes the states' discretion to consider any medically necessary treatment optional for a patient under age 21. If the treatment is permissible under the Medicaid Act, which transplants surely are, it must be made available to a participant under age 21 when medically necessary."). Unlike the district court, we reject the Commonwealth's contention that section 1396b(i)(1) affirmatively confers upon the states the unqualified discretion whether to fund transplants.
 
 
 8
 Nothing in the language of section 1396b(i)(1) suggests that Congress conferred upon the states such discretion. By its plain terms, the statute simply provides that federal Medicaid payments will not be made for organ transplants unless the state has promulgated the specified written procedures. Despite its remonstration that "[i]t is obvious ... that [1396b(i)(1)'s] language gives states complete latitude to provide as much or as little transplant coverage as they choose," Appellant's Br. at 9, even the Commonwealth is forced to acknowledge the narrow effect of the section, see id. at 8 ("In general, § 1396b(i) places limitations on the scope and availability of services for which federal funding is available.").
 
 
 9
 The tenuousness of the Commonwealth's textual argument is evidenced by its need to read subparagraph one of section 1396b(i) differently from the remaining subparagraphs of that section so as to avoid the statutory inconsistencies that would otherwise result. Unlike the way in which it reads subparagraph one, it reads subparagraphs two through fourteen--wherein Congress detailed numerous other circumstances under which it would decline payment for certain services--consistently with their plain language, as mere limitations on the federal government's obligation to make payment. Were the Commonwealth to read the latter subparagraphs instead in the same way it reads subparagraph one, it would be constrained to argue that subparagraph two, for example, in which Congress provides that federal funds may not be used to pay for the services of a physician excluded from Medicaid participation, confers upon the states absolute discretion to cover such services, a conclusion squarely at odds with 42 U.S.C. § 1320a-7(a). Reading the like subparagraphs within section 1396b(i) differently, of course, is unsatisfactory under the most elemental principles of statutory construction. This is especially so where, as here, they can be read alike and in harmony with the balance of the statutory scheme.
 
 
 10
 When Congress has intended to make provision of a medical service optional within the state's discretion, it has listed that service in section 1396d(a) but refrained from making its provision mandatory pursuant to section 1396a(a)(10). Had Congress followed this course with respect to organ transplants or even had it affirmatively provided in section 1396b(i)(1) that states shall have the discretion to cover organ transplants (or some but not all such transplants), this appeal would present a different question. It did not, however. It provided merely that the federal government will not contribute to the cost of transplants unless a state satisfies the various conditions of section 1396b(i)(1).
 
 
 11
 Section 1396d(r)(5), therefore, does not repeal 1396b(i)(1) by implication, as stridently maintained by the Commonwealth. Indeed, rather than being inconsistent with each other, the two sections complement one another. In section 1396d(r)(5), the Congress imposed upon the states, as a condition of their participation in the Medicaid program, the obligation to provide to children under the age of twenty-one all necessary services, including transplants. The Congress provided in section 1396b(i)(1), however, that the federal government would not be obligated under the general terms of section 1396b to contribute to the cost of any such transplants unless the state satisfied the conditions of that section. Given the concerns that apparently prompted enactment of section 1396b(i)(1), see, e.g., Appellant's Br. at 8 ("Prior to 1985, state coverage had been inconsistent and Congress was concerned that political influence and favoritism may have been involved in some state coverage decisions."), it was manifestly reasonable for Congress to promote the integrity of state coverage by effectively requiring standardized procedures through its control of the fisc.
 
 B.
 
 12
 The Commonwealth relies heavily on Ellis ex rel. Ellis v. Patterson, 859 F.2d 52 (8th Cir.1988), which did purport to hold that the states have total discretion whether to fund any organ transplants. Accord Dexter v. Kirschner, 972 F.2d 1113 (9th Cir.1992) (following Ellis ); Meusberger v. Palmer, 900 F.2d 1280 (8th Cir.1990) (same); Miller ex rel. Miller v. Whitburn, 816 F.Supp. 505 (W.D.Wis.1993). The relevant portion of Ellis appears to be dicta, as during the pendency of the appeal in that case the state decided to fund generally the types of liver transplants at issue as well as the particular transplant sought by the plaintiff. See 859 F.2d at 56. Moreover, it may be that the Eighth Circuit, which ruled in Ellis prior to passage of section 1396d(r)(5), would not construe section 1396b(i)(1) the same were it to confront the issue today. In any event, the court did not even attempt to rest its decision on the text of the statute; indeed, it appeared to concede that the statute's language supports our holding today. Rather, it based its decision exclusively upon the legislative history of section 1396b and its amendments. See 859 F.2d at 55 ("The statute itself can be read as merely laying out additional standards the states must meet to receive federal funds for organ transplants, but the legislative history of the provision reveals that Congress intended the states to have discretion whether to include organ transplants in their Medicaid plans."). We believe not only that the language "can be read" in the way conceded by Ellis but that it must be so read, and therefore that the Eighth Circuit's resort to legislative history was not only unwarranted but improper.
 
 
 13
 Even if it were not, however, that history does not compel (if it even supports) the conclusion reached in Ellis. Ellis relied upon two isolated sentences, one from a House Report and one from a Conference Report. The statement from the House Report is nothing more than a paraphrase of the statute itself, however, and thus reveals nothing about Congress' intent in enacting the legislation. See H.R.Rep. No. 391, 100th Cong., 1st Sess., pt. 1, at 532, reprinted in 1987 U.S.Code Cong. & Admin.News 2313-1, 2313-352 (The statute "requires that a State which covers organ transplant procedures set forth under its Medicaid plan written standards respecting the coverage of such procedures.").
 
 
 14
 The statement in the Conference Report, on which Ellis principally relied, recites that "[s]tates which choose to cover organ transplant procedures may restrict the facilities or practitioners from whom Medicaid beneficiaries may obtain the services...." H.R.Conf.Rep. No. 495, 100th Cong., 1st Sess. 756, reprinted in 1987 U.S.Code Cong. & Admin.News 2313-1245, 2313-1502. In the first place, this statement appears in a Conference Report on amendments to section 1396b that were enacted in 1987 by the 100th Congress, some two years following passage of section 1396b(i)(1) by the 99th Congress. Thus, the statement does not even represent the belief of the Committee that approved the specific provision here at issue, contrary to the suggestion in Ellis. In any event, this statement reflects, at most, only that the Committee believed--mistakenly or otherwise--that the states had discretion over whether to fund transplants, not that it believed that it had conferred that discretion in section 1396b(i)(1), a fact recognized but apparently not appreciated by the court in Ellis. See 859 F.2d at 55 (statement from Conference Report "quite plainly shows that Congress believed the states could choose not to fund organ transplants").
 
 
 15
 Apart from its reliance on Ellis and the legislative history there reviewed, the Commonwealth also relies upon a statement from the House Report accompanying enactment of section 1396b(i)(1), not cited in Ellis, that "the Committee believes that the decision to extend Medicaid coverage for one or more organ transplant procedures is appropriately within the province of each State." H.R.Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 73; see also Appellant's Br. at 10. From the context of this statement, however, it is apparent that the Committee was referring to what it understood to be the state of the law prior to enactment of section 1396b(i)(1). Necessarily, then, the Committee could not have believed that in that section it was conferring upon the states discretion as to which transplants to cover, a conclusion confirmed by the Committee's statement one page later of its understanding of the limited nature of section 1396b(i)(1), see H.R.Rep. No. 265 at 74 ("The Committee bill therefore requires that, in order to receive Federal Medicaid matching payments for organ transplant procedures after July 1, 1986, a State must have written standards....").
 
 
 16
 Finding the plain language of the statute compelling and its legislative history at a minimum not to the contrary, we hold that the Commonwealth is required by the terms of section 1396d to provide funds for medically necessary transplants to children under the ages of twenty-one who are otherwise qualified under the State's Medicaid plan.
 
 
 17
 * * * * * *
 
 
 18
 We are not unaware of the potential consequences of our decision today. Our responsibility, and the limit of our authority, however, is to interpret the law as it has been enacted by the Congress. In this case, in one statute, Congress indisputably required that states fund medically necessary organ transplants for children under the age of twenty-one. In another, Congress equally clearly only withheld its payment for the expenses associated with such organ transplants in the limited circumstance where the state has not promulgated specific standards governing transplant availability. As written, these provisions are neither contradictory nor incompatible. As the Commonwealth candidly admitted at argument, there is nothing inconsistent in Congress on one hand requiring that a particular procedure be performed but, on the other, conditioning its payment for that service on the existence of uniform standards.
 
 
 19
 Nor are we unmindful of the significant jurisprudential considerations that inform this decision. It may be, as the court in Ellis concluded, that from a policy perspective it is "unrealistic" to believe that Congress extended Medicaid coverage to organ transplants. It may even be, as the Commonwealth vigorously argues, that Congress intended by the latter provision to afford the states absolute discretion whether to fund organ transplants. If it did so intend, however (and there is no evidence in either the statute or its history that this was its intention), it did not embody that intention in statute. And we have no more authority to give effect to that which was never enacted than we do to give effect to that which was never intended. Such is the rule of law.
 
 
 20
 The judgment of the district court is affirmed.
 
 
 21
 AFFIRMED.
 
 HAMILTON, Circuit Judge, concurring specially:
 
 22
 While I agree with the court's disposition of this case, I write separately to emphasize the court's holding is a narrow one. The court holds that "the Commonwealth is required by the terms of section 1396d to provide funds for medically necessary transplants to children under the ages of twenty-one who are otherwise qualified under the State's Medicaid plan[,]" supra at 727. As the court explains, "there is nothing inconsistent in Congress on the one hand requiring that a particular procedure be performed but, on the other, conditioning its payment for that service on the existence of uniform standards." Supra at 727. The court's construction of the Medicaid statute is honest and faithful to its plain language. However, its interpretation that § 1396b does not grant states the discretion to fund organ transplants will invariably open the door to individuals over the ages of twenty-one to claim that states, like the Commonwealth of Virginia, are required to pay for their organ transplants under the Medicaid statute because the procedure is medically necessary. See Ellis by Ellis v. Patterson, 859 F.2d 52, 54 (8th Cir.1988) (Medicaid must fund, among other things, in-patient and out-patient services, x-ray and laboratory services, and physicians' services whenever they are medically necessary.). The attendant drain that such expensive and elaborate procedures would have on the finite Medicaid resources would be astounding and arguably inconsistent with the intent and purpose of the Medicaid statute. Ellis, 859 F.2d at 55 ("[F]ederal appropriations are '[f]or the purpose of enabling each State, as far as practicable under the conditions in such State,' to furnish medical assistance to the needy.") (citing 42 U.S.C. § 1396). Whether a state would be required to pay for such services presents a profoundly troubling question. To the extent that the court's opinion does not hold or otherwise suggest that states, such as the Commonwealth of Virginia, are required to provide funds for organ transplants to individuals over the ages of twenty-one because the procedure is medically necessary, I join the court's opinion.