655 F.2d 766
 Louise BOND, individually and on behalf of her minor
children, and others similarly situated, et al.,
Plaintiffs-Appellants,
v.
Wayne A. STANTON, individually and in his capacity as
Administrator of the Indiana Department of Public
Welfare, et al., Defendants-Appellees.
 No. 80-1886.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 13, 1981.
Decided July 27, 1981.
 
 Michael M. Mulder, Project Justice & Equality, Valparaiso University School of Law, Valparaiso, Ind., for plaintiffs-appellants.
 Gordon E. White, Indianapolis, Ind., for defendants-appellees.
 Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and JAMESON, Senior District Judge.*
 SWYGERT, Senior Circuit Judge.
 
 
 1
 In this class action lawsuit, before our court for the second time, plaintiffs allege that various Indiana state officials have failed to implement a mandatory federal health program critical to the welfare of Indiana's needy children. According to 42 U.S.C. § 1396d(a)(4)(B), Early and Periodic Screening, Diagnosis and Treatment (EPSDT), a preventive health program for children, must be provided by each state participating in the federal Medicaid program.[1]
 
 
 2
 In March 1974, the district court enjoined the defendants from continuing to administer their program in violation of 42 U.S.C. § 1396d(a)(4)(B) and the regulations and guidelines thereunder. The defendants were ordered to implement a satisfactory EPSDT program in accordance with federal law. We affirmed that judgment noting:
 
 
 3
 The mandatory obligation upon each participating state to aggressively notify, seek out and screen persons under 21 in order to detect health problems and to pursue those problems with the needed treatment is made unambiguously clear by the 1967 act and by the interpretative regulations and guidelines.
 
 
 4
 504 F.2d 1246, 1251 (7th Cir. 1974).
 
 
 5
 Indiana submitted its proposed plan in March 1975, and in August 1976, the district court found that Indiana's EPSDT program was in compliance. After the plaintiffs' motion to amend the judgment was denied in May 1980, plaintiffs filed this appeal. For the reasons that follow, we reverse.
 
 
 6
 * The thrust of the plaintiffs' argument is that Indiana still fails to recognize the extent to which Congress in enacting EPSDT imposed additional responsibilities on the states which had not been required under the regular Medicaid program. In our prior opinion, we quoted and endorsed the Department of Health, Education and Welfare (HEW) 1973 regulation guidelines for EPSDT, issued as part of the Medical Assistance Manual, Part 5, Sections 5-70-00 et seq. (MSA-PRG-21), which state: "Congress intended to require States to take aggressive steps to screen, diagnosis and treat children with health problems." MSA-PRG-21, § 5-70-20(A).[2]
 
 
 7
 A penalty of one percent of the amount payable by the Government to a state can be assessed for failure to provide the required services. 42 U.S.C. § 603(g). The penalty is imposed if a state fails to inform families of the health screening services, provide or arrange for screening where requested, or arrange for corrective treatment in response to the results of the screening. We previously noted that the failure of the federal administrative agency to assess a penalty did not preclude our court from ordering declaratory and injunctive relief. 504 F.2d at 1251.[3]
 
 
 8
 In our prior opinion, we considered the extent of Indiana's 1974 EPSDT program and found that it was inadequate:
 
 
 9
 (L)etters were sent to Medicaid recipients which advised that caseworkers would visit the recipient and that "the caseworkers will want to know if you feel that your children have any health problems." Medicaid providers were advised that caseworkers would give each recipient a form "with instructions to contact their choice of appropriate Medicaid providers, should a health problem be reported by the recipient, observed by the caseworker, or should the recipient request any type of medical service ...."
 
 
 10
 504 F.2d at 1250. We noted that the defendants themselves had summarized the nature of Indiana's compliance as follows:
 
 
 11
 Any of the eligible children in this state can secure all of the requested services merely by requesting them from their local health provider .... (Recipients) need merely take their children to the health provider of their choice and obtain for their children the required services.
 
 
 12
 504 F.2d at 1250-51 (quoting from the defendants' reply brief). In sum, we stated that Indiana's "somewhat casual approach" to EPSDT did not conform to the aggressive search for early detection and treatment of child health problems mandated by the 1967 statute and its interpretative regulations and guidelines. 504 F.2d at 1251. The question before us is whether the district judge was clearly erroneous in finding that Indiana's EPSDT program was in compliance in 1976.
 
 
 13
 The plaintiffs allege that the program was and is deficient in three major and overlapping respects: failure to define a "screening package" or conduct "screens"; failure to identify Medicaid providers willing to perform screens; and failure to monitor screening and the required subsequent diagnosis and treatment where indicated.
 
 A. Screens
 
 14
 It is not disputed that Indiana's 1976 screening plan required screening for general physical and mental defects, dental care and disease, and vision and hearing problems. The plaintiffs argue, however, that a more comprehensive approach was envisioned by Congress as set out in the HEW regulation guidelines which this court found to describe "what is required in the nature of case finding, screening, diagnosis and treatment," 504 F.2d at 1249. Those guidelines specified:
 
 
 15
 At a minimum screening should include: a health and developmental history (physical and mental); an assessment of physical growth; developmental assessment; inspection for obvious physical defects; ear, nose, mouth and throat inspection (including inspection of teeth and gums); screening tests for cardiac abnormalities, anemia, sickle cell trait, lead poisoning, tuberculosis, diabetes, infections and other urinary tract conditions; and assessment of nutritional status and immunization status. An assessment of this nature is necessary to identify individuals with potential or apparent physical or mental health and developmental problems requiring diagnosis and, possibly, treatment.
 
 MSA-PRG-21, § 5-70-20(B)(1).[4]
 
 16
 We agree with the plaintiffs that Indiana did not define the contents of its screening package with enough specificity to ensure that needy children in Indiana receive the thorough health screening intended by Congress. In so holding, we do not require that Indiana comply to the letter with every HEW guideline. We are of the view, however, that those guidelines well express the spirit of the statute in terms of the breadth of the screen intended. The special emphasis placed by Congress on a large scale preventive screening and treatment program indicates that Congress believed this health program would produce meaningful results. Without a thorough screening, including for example appropriate laboratory tests and a nutritional assessment, two diseases known to be among the leading health problems of poor children malnutrition and lead poisoning may well go undetected or unprevented.
 
 
 17
 General physical examinations may of course include all of the necessary features. Indiana, however, by requiring only a general physical examination (even with tests for vision, hearing, and dental or mental problems) leaves it to the provider to decide what services to perform.[5] Thus Indiana cannot "assure that screening ... will be available to all eligible individuals under 21 years of age," 45 C.F.R. § 249.10(a)(3)(iv) (1975), or that the services are "sufficient in amount, duration and scope to reasonably achieve their purpose." 45 C.F.R. § 249.10(a)(5)(i) (1975).[6]
 
 B. Medical Providers
 
 18
 Indiana has not discerned which Medicaid providers are willing and able to provide screens. Instead it is assumed that all medical providers can and will provide the necessary service. Defendant Wayne Stanton, Administrator of the Indiana Department of Public Welfare, conceded that no Medicaid providers have explicitly agreed to do EPSDT screening. Although the defendants contend that caseworkers sometimes aid recipients in choosing an appropriate provider, the record shows that recipients may simply be handed a general list of Medicaid providers who have never themselves been assessed for the ability or willingness to perform complete screens.
 
 
 19
 Pursuant to 45 C.F.R. § 205.146(c)(ii) (1975), a state must
 
 
 20
 (p)rovide or arrange for the provision of such screening services in all cases where they are requested. This means that a State must:
 
 
 21
 (A) Inform recipients requesting screening services of the names and locations of providers offering such services....
 
 
 22
 (emphasis added) For that reason, 45 C.F.R. § 249.10(a)(3)(i) requires the "establishment of administrative mechanisms to identify available screening and diagnostic resources...." (emphasis added)[7] The defendants have not complied with those requirements.
 
 
 23
 C. Monitoring for Screening, Diagnosis, and Treatment
 
 
 24
 Indiana has no way of knowing whether a child has received a complete screen. The record indicates that statistics are collected only on the basis of responses given on the "Medicaid Request for Payment" form submitted by Medicaid providers. Though question 33 on that form asks, "Was an examination performed for the EPSDT program?", it does not ask whether a complete screen was performed. An affirmative response is counted as a screen. Question 35 asks, "As a result of the screening, was further diagnosis and/or treatment required?" and an affirmative answer is also counted as a screen. Even if the answer is negative to both those questions, a "screen" is counted if the Medicaid provider bills for performing a physical, mental, eye or ear examination.
 
 
 25
 Besides not knowing whether complete screens are being performed, the defendants are not in compliance with the statutory mandate to provide "such health care, treatment and other measures to correct or ameliorate defects and chronic conditions discovered (from the screening), as may be provided in regulations of the Secretary." 42 U.S.C. § 1396d(a)(4)(B). Pursuant to 45 C.F.R. § 205.146(c)(iii) (1975), a state must
 
 
 26
 (a)rrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is indicated by such screening services....[8]
 
 
 27
 Regulation 249.10(a)(3)(iv) (1975) mandates that "treatment of conditions discovered ... will be available to all eligible individuals ...." (emphasis added).
 
 
 28
 This court has already recognized the mandatory obligation upon each state to pursue problems detected through screening with the necessary treatment. 504 F.2d at 1250. A failure to implement the treatment aspect of EPSDT unquestionably results in a failure of the entire program. Detection alone is meaningless without the appropriate follow-up.
 
 
 29
 For that reason, "(p)rompt transmittal of the results of the screening procedures is necessary so that diagnostic studies and treatment can be instituted without delay." MSA-PRG-21, 5-70-20(B)(8). By regulation, a state must
 
 
 30
 (t)ake steps to assist recipients needing diagnostic and treatment services so that such recipients are able to receive them within a reasonable time period. Initial diagnosis and treatment must be available normally within 60 days of the screening.
 
 
 31
 45 C.F.R. § 205.146(c)(1)(iii)(B). To avoid a penalty, the state must be able to document compliance with these conditions and "shall provide reports thereon as prescribed in this regulation and in Program Regulation Guides and Program Instructions issued by (HEW)." 45 C.F.R. § 205.146(c)(3). A regulation guideline on the subject of providing or arranging for corrective treatment states:
 
 
 32
 The report must describe the arrangements made to assist eligible individuals in obtaining treatment, with supporting documentation in the form of State regulations, staff instructions, provider manuals, or written provider agreements, and describe procedures for identification of individuals needing treatment services under EPSDT who did not receive such services, for purposes of (i) assisting them in receiving such service within a reasonable time normally not to exceed 60 days and (ii) demonstrating that State action or inaction is not the cause of such failure to receive services within 60 days of screening date.
 
 
 33
 MSA-PRG-32, § 5-70-30A(1)(c).
 
 
 34
 We have been able to discern no evidence of a form or other means of required or consistent feedback from the Medicaid provider who performs the screen back to the caseworker handling that recipient's file. In her deposition, Sherry Tollefson, Indiana Department of Public Welfare Supervisor of Program Administration, conceded that there was no such system. Moreover, as noted earlier, data collected on who was screened comes from the "Medicaid Request for Payment" form which can be returned up to twelve months after the screen is performed hardly sufficient to assure that needed treatment is actually received within sixty days. It appears that the defendants rely on the providers to perform the treatment or refer the patients, or on the recipient to request help from the caseworker. In our view, the statute requires more. The state must assure that arrangements are made for treating detected health problems.[9] Without feedback from the Medicaid provider who performs the screen, the caseworker cannot know who needs treatment and who is getting it. Monitoring of this aspect of the program is mandatory in order to prevent future health problems as Congress intended.
 
 
 35
 In short, we conclude that Indiana has still not complied with this court's mandate that "EPSDT programs must be brought to the recipients." 504 F.2d at 1251. As we read 42 U.S.C. § 1396d(a)(4)(B) and its regulations and guidelines, Indiana cannot assure that it provides a screen sufficiently comprehensive for the purpose intended or that it pursues those health problems detected with the necessary treatment. In our view, the defendants have relied too heavily on their previous Medicaid program and have failed to comply with federal law.
 
 
 36
 We therefore reverse the judgment of the district court and remand for proceedings consistent with this opinion.[10] In deciding this case, we have relied on the regulations and guidelines in effect at the time the district judge entered his order in August 1976. Since that time, more detailed regulations have been issued. Because nearly five years have elapsed between the 1976 judgment and the issuance of this opinion, and in the interest of both justice and judicial economy, the district judge on remand should assess Indiana's resubmitted plan according to currently applicable federal law.
 
 
 
 *
 The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation
 
 
 [1]
 In 1967 Congress amended Title XIX of the Social Security Act to require that each State operating a medical assistance plan receiving federal financial assistance furnish:
 early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physical or mental defects and such health care, treatment and other measures to correct or ameliorate defects and chronic conditions discovered thereby, as may be provided in regulations of the Secretary.
 42 U.S.C. § 1396d(a)(4)(B).
 
 
 [2]
 The agency charged with administering EPSDT, the Department of Health, Education and Welfare, has since been renamed the Department of Health and Human Services
 
 
 [3]
 Declaratory and injunctive relief at the behest of "those individuals most directly affected by the administration of (a) program" are available "should the State not develop a conforming plan within a reasonable period of time" when using federal funds. Rosado v. Wyman, 397 U.S. 397, 420-21, 90 S.Ct. 1207, (1221-1222,) 25 L.Ed.2d 442 (1970)
 504 F.2d at 1251.
 
 
 [4]
 In 1979, a new regulation was promulgated which required that:
 (T)he agency must provide for at least the following screening services:
 (1) Health and developmental history.
 (2) Unclothed physical examination.
 (3) Effective January 1, 1981, developmental assessment.
 (4) Immunizations which are appropriate for age and health history.
 (5) Assessment of nutritional status.
 (6) Vision testing.
 (7) Hearing testing.
 (8) Laboratory procedures appropriate for age and population groups.
 (9) For children 3 years of age and over, dental services furnished by direct referral to a dentist for diagnosis and treatment.
 
 
 [42]
 C.F.R. § 441.56(a) (1980). At oral argument defendants' counsel stated that Indiana now defines a screening package that "word-for-word" tracks the language of the above provision. We have been unable to find that information in the record, but if that change has occurred, Indiana is in compliance insofar as defining for its providers the contents of a screening package
 
 
 [5]
 The guidelines require that a "screening package" be defined by the state to insure compliance by Medicaid providers with regulations. MSA-PRG-35, § 5-70.9-00 (1975)
 
 
 [6]
 For purposes of reviewing the district court's 1976 decision, we have applied the regulations and guidelines in effect at that time
 
 
 [7]
 HEW apparently intends that physicians will be given a choice as to whether to participate in the EPSDT program:
 (P)hysicians who participate in the Title XIX program should be informed by the State agency about the program and the components of the screening package. If a physician chooses to provide screening services....
 MSA-PRG-27, § 5.70.9-00 (emphasis added).
 
 
 [8]
 A penalty is assessed for failure to
 (1) inform all families in the State ... of the availability of child health screening services ....
 (2) provide or arrange for the provision of such screening services in all cases where they are requested, or
 (3) arrange for ... corrective treatment the need for which is disclosed by such child health screening services.
 42 U.S.C. § 603(g). We note that the requirement that corrective treatment be arranged, unlike the requirement for screening services, does not depend on a request from the recipient.
 
 
 [9]
 See supra at 5, n.4
 
 
 [10]
 We cannot say on what basis the district judge concluded that Indiana's program was in compliance because he set out no findings of fact. He did note, however, a June 1976 regional HEW audit which found that Indiana's EPSDT program met the requirements of 45 C.F.R. § 205.146(c) and recommended that no penalty be assessed
 In September 1976, however, after the regional audit was reviewed by the national office, HEW Commissioner Keith Weikel informed Regional Commissioner Clyde Downing: "(W)e have reviewed the above reports and have identified penalty issues in each of the quarters in question. We have referred the reports to the office of General Counsel for opinion...." Beatrice Moore, Director of the Division of EPSDT, wrote to the Assistant General Counsel:
 A review has been made of the (regional audit) ... We do not concur with the Regional Office's assessment that the State was in compliance with the penalty regulation. The report indicated obvious penalty liability under 45 C.F.R. § 205.146(c) of treatment arrangements.
 Finally, in April 1977, the Office of the General Counsel issued its report entitled "Indiana EPSDT Penalty Report Second and Third Quarter FY 1976":
 On the basis of a review conducted by the Regional Staff, MSA has concluded that the one percent penalty authorized by section 403(g) of the Social Security Act be assessed against Indiana for its failure to comply with pertinent requirements for treating eligible children. We concur in MSA's conclusion.
 The defendants point out that the record contains no official HEW document showing that Indiana was actually assessed a penalty for the period in 1976 up to and including August 1976. We respond by noting first our prior holding that injunctive relief can issue without an administrative penalty, 504 F.2d at 1251, and second Justice Douglas's statement in Rosado v. Wyman, 397 U.S. 397, 426, 90 S.Ct. 1207, 1225, 25 L.Ed.2d 442 (1970) (Douglas, J., concurring):
 HEW has been extremely reluctant to apply the drastic sanction of cutting off funds to States that are not complying with federal law. Instead, HEW usually settles its differences with the offending States through informal negotiations.
 The short-term effect of a reduction in federal funding is of course to exacerbate the problem facing Indiana's needy children.