Maritza **RIVERA**, Plaintiff,

v.

Gregory L. **COLER**, Defendant.

No. 85 C 9723.

United States District Court,
N.D. Illinois, E.D.

Feb. 19, 1986.

Revised Feb. 21, 1986.

Phillip H. Snelling, Nelson A. Soltman, Legal Assistance Foundation of Chicago, Chicago, for plaintiff.

James C. O'Connell, Sp. Asst. Atty. Gen., Chicago, for defendant.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

This action was initially brought by Maritza Rivera, a 19-year-old woman dying from liver failure, seeking three types of legal relief against Illinois Department of Public Aid ("Department") Director Gregory L. Coler ("Coler") in connection with her effort to obtain a liver transplant with the use of public medical assistance. Ms. Rivera's Complaint (brought on her behalf by her mother and next friend) initially requested (1) a declaration of rights, (2) injunctive relief and (3) an award of costs and attorneys' fees.

After Honorable Ann C. Williams (acting as this District Court's emergency judge) had entered a November 16, 1985 temporary restraining order (the "TRO") to facilitate the granting of the requested substantive relief to Ms. Rivera, no compatible liver transplant proved available during the TRO's 10-day life. On November 26 this Court orally granted a 10-day extension of the TRO (Department having determined in the meantime that Ms. Rivera was in fact eligible for participation in the Medicaid medical assistance program). This action was tragically mooted by Ms. Rivera's death that very day, before a transplant could be located for her. Nonetheless her attorneys now press a claim for fees under 42 U.S.C. § 1988 ("Section 1988") on the theory Ms. Rivera was the "prevailing party" in her 42 U.S.C. § 1983 ("Section 1983") action. Though there is language in some

cases pointing in both directions on that score, Ms. Rivera's lawyers' position is more persuasive.

When this action was first filed, Ms. Rivera was caught in a classic Catch-22 set of administrative toils. Before a possible donor for the essential liver transplant could be searched for by an admitting hospital, Ms. Rivera had to be admitted to that hospital; before she could be admitted to the hospital, she had to establish Medicaid eligibility; before she could establish Medicaid eligibility, Department had to process her application, and it was urging it had 60 days to do that (only 30 days of that period having elapsed); and the only problem with that latter proposition was the prognosis (unfortunately all too accurate) that Ms. Rivera could not survive that long without the liver transplant. That completed the procedural circle from which Ms. Rivera could not escape (except by dying) without judicial intervention.

When the then-newly-filed suit was brought before Emergency Judge Williams November 16, Ms. Rivera's goal was (1) to obtain an immediate determination of her Medicaid eligibility and (2) to obtain Medicaid coverage of the liver transplant surgery—both matters that Department had not provided voluntarily. At the TRO hearing:

1. Coler's counsel urged Department could not itself determine Ms. Rivera's Medicaid eligibility "since it hasn't had the opportunity to." Nonetheless Coler's counsel said Department "is not going to object strenuously to an order that she be found eligible...." and "if the Court finds her eligible, then so be it."

2. Despite that concession on the first point advanced by Ms. Rivera's lawyers, counsel for Coler said Department would resist any order requiring the transplant to be paid for (a necessary condition for the hospital to act). That of course created the classic prospect of the Pyrrhic victory.[1]

---

1. As the text has already indicated, further delay would assure Ms. Rivera's death. What the text has not reflected is that medical opinion was

that a timely liver transplant was likely to reverse Ms. Rivera's rapidly-deteriorating condition in a dramatic (almost miraculous) way,

Judge Williams proceeded to consider the authorities submitted to her by Ms. Rivera's counsel (including *Bond v. Stanton,* 655 F.2d 766, 771 (7th Cir.1981)) and granted the TRO.

Not only did Ms. Rivera thus get the legal relief just described, but Coler then expedited the review of her application. By the time the TRO was about to run out and counsel presented themselves to this Court for an extension, Department had found Ms. Rivera Medicaid-eligible. There is really no question that this lawsuit was the stimulus for that action—that left to its own devices (as Coler's counsel candidly conceded at the initial hearing) Department had been and was unable to make the necessary eligibility determination.[2]

On those facts Ms. Rivera was a Section 1988 "prevailing party": She secured the only relief that could have been obtained before her death foreclosed the question of ultimate relief—the transplant operation itself. *Martin v. Heckler,* 773 F.2d 1145, 1149, 1151 (11th Cir.1985) (en banc); *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 600–01 (1st Cir.1982); *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir.1980). Under the teaching of those cases, this action satisfies the principles that control where some or all of a plaintiff's rights have been vindicated by official action for which the Section 1983 lawsuit has been a catalyst (see *Crosby v. Bowling,* 683 F.2d 1068, 1070 (7th Cir.1982); *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982)).

Indeed the principles just referred to are fully consistent with the cases urged upon this Court by Coler. Even a brief analysis of those cases shows why that is so:

1. In *Bly v. McLeod,* 605 F.2d 134, 137 (4th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980), the TRO had simply preserved the status quo, and the action that mooted the relief sought by the lawsuit (a determination of the statute's validity) was a legislative amendment of the statute. That contrasts sharply with the present lawsuit's having triggered relief not otherwise obtainable by Ms. Rivera.

2. In *Paragould Music Co. v. City of Paragould,* 738 F.2d 973, 975 (8th Cir. 1984) (per curiam), the Court contrasted the status-quo-preserving TRO in the case at bar with cases where "the plaintiffs' suit was a catalyst to bring about the relief sought"—which latter description fits precisely the situation here.

3. *Laurenzo v. Mississippi High School Activities Association, Inc.,* 708 F.2d 1038, 1041–42 (5th Cir.1983) posed the unusual situation of an ex parte preliminary injunction that had been issued without notice and without an opportunity for response by defendants, to preserve plaintiff's rights pending appeal. Because the grant of interim relief had been predicated upon plaintiff's irreparable harm, with no hint of the court's having made any judgment on the merits, fees were denied. More importantly, *Laurenzo* simply distinguished (rather than disapproving) *Doe v. Marshall,* so the earlier statement in this opinion as to *Doe*'s consistency with this case stands unimpaired by *Laurenzo.*

Indeed, Ms. Rivera's entitlement to fees is well-illustrated by the very argument advanced by Coler in seeking to distinguish *Doe* :

> In contrast to *Doe,* Plaintiff in the present case not only asked this Court to temporarily restrain Defendant from failing to immediately extend Medicaid eligibility and coverage of liver transplant surgery to her, but also asked this Court to declare that Defendant's failure to determine plaintiff Medicaid eligible and to cover the cost of her liver transplant

---

providing a substantial chance of her full recovery.

**2.** At the November 26 hearing before this Court, counsel for Coler acknowledged the swift processing after suit was brought was the direct result of the matter having been brought to court (before that the application had been wending its way through the administrative machinery in what can at most be termed "with all deliberate speed").

surgery violated federal laws and regulations.

Because Ms. Rivera's death cut the proceedings short, this Court never had to resolve the "but also" aspect described by Coler in that quotation. But Ms. Rivera's lawyers had submitted authority supporting the likelihood of such a ruling, and more significantly Ms. Rivera *was* successful in obtaining the relief first described by the Coler quotation—and this lawsuit unquestionably brought about that result.

Immediately after this opinion had been prepared and placed in what was believed to be final form, this Court received the slip opinion issued February 11 by our Court of Appeals in *Lovell v. City of Kankakee*, 783 F.2d 95 (7th Cir.1986). That case reversed a trial court's denial of fees in a Section 1983 case, and the Court of Appeals' discussion (*Id.* at 96–97) both reaffirmed and reapplied the standards set out in *Harrington v. DeVito*. Both the analysis and the result in *Lovell* reinforce the decision reached here.

Accordingly, this Court determines Ms. Rivera was a "prevailing party" in Section 1988 terms. Her counsel has already furnished an affidavit as to time spent and out-of-pocket expenses advanced. Because everyone's interests would be served by narrowing the scope of any factual controversy that might require an evidentiary hearing (the familiar fees-on-fees problem), counsel for the parties are urged to confer in advance of the date hereby set for an in-court status report. Counsel for both parties are ordered to appear for such report February 21, 1986 at 9:00 a.m.