**Natalia PEREIRA, et al., Plaintiffs,**

**v.**

**Bruce KOZLOWSKI, Director of the Department of Medical Assistance Services of the State of Virginia, Defendant.**

**No. 3:92–CV–255.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 3, 1992.

William Kimble, Fort Worth, Tex., for plaintiffs.

Ternon Tucker Galloway Burton, Supreme Court of Va., Pamela Malone Reed, Virginia Rose Manhard, Office of the Atty. Gen., Richmond, Va., for defendant.

MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on both parties' respective motions for summary

---

judgment. All motions and oppositions have been thoroughly briefed, and there are no material facts in dispute. Therefore, a ruling on the summary judgment motions is appropriate. The Plaintiffs are Natalia Pereira, a three year-old girl with end-stage cardiac dysfunction, by her parents as next friends. The Defendant, Bruce Kozlowski, is Director of the Virginia Department of Medical Assistance Services ("DMAS") and is sued in his official capacity.

The Plaintiffs challenge the policy of the Virginia Medicaid Program ("Program") to exclude medically necessary heart transplants from the scope of services covered by the Program. The Program, which is administered by DMAS, is currently under a Preliminary Injunction issued by this Court on April 23, 1992, requiring DMAS to cover a heart transplant for the Plaintiff.

Medicaid is a cooperative effort between the federal government and the states to provide medical care to the needy. Each state may design its own program and no state is obligated to participate, but in order to receive federal financial assistance a state must comply with the Medicaid Act. Subchapter XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* State Medicaid programs, at a minimum, must fund seven categories of mandatory medical services in order to qualify for federal funding. 42 U.S.C. § 1396a(a)(10)(A). Mandatory services include inpatient and outpatient hospital services, other laboratory and x-ray services, early and periodic screening, diagnosis, and treatment ("EPSDT") for persons under age 21, as defined in 42 U.S.C. § 1396d(r), and physicians' services.

■ The dispute before this Court stems from two apparently contradictory provisions of the Medicaid Act. The first is 42 U.S.C. § 1396b(i), which provides that a State Medicaid program will not be reimbursed for payments made for organ transplants unless payments are made pursuant to specified standards in the State plan. Virginia Medicaid does not include written standards for heart transplant procedures. On this basis, therefore, the Defendant argues to this Court that DMAS can not pay

for heart transplant procedures and administer the Program consistent with federal law.

Plaintiffs point to the definition of EPSDT in § 1396d(r), which is mandatory care for a child of Natalia's age and is defined to include screening services, vision services, dental services, hearing services and "such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."

Subsection (a), referred to above, lists a vast array of medical services whose coverage is either mandatory or permissible under State Medicaid programs. There is no dispute in the instant case that transplants may permissibly be covered under a Medicaid plan. Plaintiffs argue that § 1396d(r) obligates the states to furnish any necessary medical care for participants under age 21, and that the language "whether or not such services are covered under the State plan" negates the impact of § 1396b(i).

DMAS concedes that most of the provisions of § 1396b(i) do not touch on substantive care questions—they prohibit payment, for example, if a treating physician has been excluded from participation in Medicaid programs for fraudulent billing, or if a treating hospital lacks a utilization review plan. The prohibition concerning organ transplants, in contrast, raises a complete bar to a substantive area of medical treatment based on the content of a State plan. DMAS argues here that Congress' intent, as expressed in the 1985 House Report, was to allow states the prerogative to decide whether to allocate their scarce resources to include coverage for organ transplants. Plaintiffs contend that recourse to legislative history is inappropriate where the statutory language is unambiguous.

There is apparently no contention in this lawsuit that heart transplants are experimental; the question DMAS would like re-

served for the Commonwealth is whether procedures involving such extraordinary expense are justified. DMAS represents that at the time these motions were briefed, the Virginia State Board of Medical Assistance Services was conducting studies to develop criteria for Medicaid-funded transplants. DMAS argues that this "orderly, broadly-informed policy-making" process should not be cut short. Plaintiffs counter that the effort underway in Virginia is "too little, too late" and merely duplicates the effort of existing studies concerning the efficacy of organ transplants.

The Defendant here also concedes that § 1396d(r), which was passed in 1989 to define EPSDT, effectively requires each state to fund the full extent of permissible services under the Medicaid Act for participants under age 21, regardless of whether the state elected to include those services in its Medicaid plan. DMAS maintains that § 1396d(r) did not override § 1396b(i), and that the latter operates to make certain coverage impermissible in any Medicaid plan. DMAS points out that other limitations of § 1396b(i) remain intact, i.e. precluding payment to physicians disqualified from Medicaid participation. The Defendant also notes that the provision of § 1396b(i) pertaining to organ transplants is materially different from the rest of § 1396b(i): it sets up written standards without which a state may not cover an entire field of substantive medical treatment, while the other sections prohibit payment based on the behavior of the health care provider.

The parties cite precious little case law. The apparent reason is that few cases are actually litigated, due in part to the emergency nature of the claims and the availability of Temporary Restraining Orders. The case most nearly on point is *Ellis by Ellis v. Patterson*, 859 F.2d 52 (8th Cir. 1988). The Plaintiff in *Ellis* sought to have the court oblige the Arkansas Medicaid plan to fund a liver transplant for a 10–month–old female baby. Arkansas's Medicaid plan at that time contained no standards pertaining to organ transplant. During the course of the litigation the Arkan-

sas legislature amended the plan to provide for organ transplants, but the court decided the issue in the event the amendment failed to meet federal Medicaid Act requirements.

The Eighth Circuit Court of Appeals found that the Medicaid Act at that time did not require states to fund organ transplants but left it to the states to choose which, if any, transplants, to cover. The court cited *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), for the proposition that Medicaid programs must fund the mandatory categories of treatment whenever they are "medically necessary." The court noted that states must fund medical treatment in each case "sufficient in amount, duration, and scope to reasonably achieve its purpose," citing 42 C.F.R. § 440.230(b). Finally, the court observed that State Medicaid agencies may not arbitrarily deny or reduce coverage solely because of a particular participant's diagnosis, type of illness, or condition. 859 F.2d at 54.

Rather than classify organ transplants as a medically necessary procedure required under the Medicaid Act, the Eighth Circuit in *Ellis* termed transplants a "special situation" governed by 42 U.S.C. § 1396b(i). The key element missing from the Eighth Circuit's analysis for this Court's purposes is § 1396d(r), which was enacted after *Ellis*, and on which plaintiffs before this Court rely to defeat § 1396b(i). *Ellis*, therefore, is only moderately helpful.

The Plaintiffs cite *Montoya v. Johnston*, 654 F.Supp. 511 (W.D.Tex.1987), but the Court finds that too to be only partially helpful. In *Montoya*, the State plan did not bar payment for an organ transplant, but established a dollar limitation of $50,-000 in inpatient hospital care per Medicaid participant, per year. The child plaintiffs in the case required guarantees of $100,000 each to be placed on organ donor lists. The court found that the proposed organ transplants were medically necessary procedures and that Texas's dollar limitation constituted arbitrary denial of coverage and therefore violated the Medicaid Act.

The language of 42 U.S.C. § 1396d(r) makes all medically necessary treatment which is permissible under the Medicaid Act mandatory for participants under age 21 and explicitly does so regardless of whether such services are included in the State plan in question. The Defendant has presented no case law in support of its contrary interpretation. Plaintiffs have not presented binding decisions, but the actions of other states have some measure of persuasive power. The question is simply one of statutory interpretation. In the Court's reading of the relevant language, § 1396b(i) prohibits payment for organ transplants unless a State plan includes specified transplant standards. The section does not make organ transplants ineligible for Medicaid coverage, it merely instructs the states that if they choose to provide this optional coverage, they must do so within certain limitations. Section 1396d(r), however, unambiguously removes the states' discretion to consider any medically necessary treatment optional for a patient under age 21. If the treatment is permissible under the Medicaid Act, which transplants surely are, it must be made available to a participant under age 21 when medically necessary. For this reason, the Plaintiff's motion for summary judgment will be Granted.

■ Another parallel and equally troubling issue in this case must be addressed. Given that the state must pay for the Plaintiff's medically necessary transplant, does the Commonwealth have to pay for the procedure to be done at the Plaintiff's choice of hospital? At first glance, this question may seem logistical in nature. In the present case, the Plaintiffs reside in Northern Virginia. They would prefer their child to be treated at the Children's Hospital in Pittsburgh, while the Commonwealth would prefer the operation to be done at the Medical College of Virginia ("MCV").

The question to be answered is very specific. The Commonwealth does not challenge a parent's right to choose the health facilities that treat their child. The question is whether that choice becomes the Commonwealth's when they are asked to pay for the procedures. There is little guidance to be found in the statutes or in case law. The Medicaid Act contemplates a state program paying for out of state services, however, this is most commonly provided when the state determines that the needed medical services are more readily available in another state. 42 C.F.R. § 431.52(b)(3). Although availability is subject to change in emergency situations, the medical services are presently available at both hospitals. In fact, the real factor affecting the availability of the medical treatment is the availability of an organ donor, which is not more likely to occur at either facility.

As this Court views the determining factors, it is obvious that primary concern must be with the quality of medical care available for the child. If any discrepancy existed in the quality of care, and it could be established that the child would receive even marginally better care out of state, or if the in-state facilities were unavailable in an emergency, this would be the end of the consideration and the state would have to pay a reasonable price for the operation to be done in Pittsburgh. In the present case, however, the doctors in Pittsburgh and in Richmond agree that there would be no distinguishable difference in the care provided by the two hospitals. In this situation, that Court now must determine whether there is a legitimate state interest in treating the child in-state.

The Defendant and DMAS are charged with the burden of determining how the Department's finite resources are to be used to provide the most benefit to the most people. At times, this requires the Department to make the unenviable determination of which medical treatments are most cost efficient. The Defendant correctly points to the inevitable conclusion that court orders to pay for expensive transplant operations require a redistribution of funds designated for the basic health care of many to cover the extraordinary medical costs of a few. With this in mind, the Defendant asks this Court to look at the bottom line.

The Children's Hospital in Pittsburgh estimates their charges for the procedure will exceed $200,000.00. DMAS has disclosed that MCV, through an exclusive agreement with DMAS, will do the procedure for the state free of charge. Even if MCV were to bill the Commonwealth for the procedure, the estimated charge would be $114,000.00. This tremendous financial burden will not be absorbed by the state, but by other potential Medicaid recipients. In this instance, where the Commonwealth can provide medical care of equal quality without disrupting the financial resources available for Medicaid recipients, there is a legitimate state interest involved.

The Plaintiffs urge this Court to allow their child to remain at the Children's Hospital of Pittsburgh to preserve the continuity of her care. The Plaintiffs fail to mention, however, that when the child's condition became critical, she was admitted and stabilized at Georgetown University. It was not until after this Court requested an emergency hearing to determine the best location for the procedure that the Court was advised that the child at that very moment was in transit to Pittsburgh. Although this Court respects parents' requests to have their child treated at a particular facility, when these requests are not premised on the difference in quality of medical care [1], and create a tremendous financial burden that must ultimately be absorbed by other Medicaid recipients, these requests are not compelling.

This is by no means to be construed as an Order for the Plaintiff to be moved to MCV for her treatment. This decision can only be made by the child's parents. This Memorandum, and the Order which follows, does dictate however, under which circumstances the Commonwealth must pay for the procedures. Section 1902(a)(13)(A) of the Medicaid Act requires the Commonwealth to provide financial resources that the state finds are "reasonable and adequate to meet the costs that must be incurred by economically and effi-

ciently operated [hospitals] . . ." Therefore, if for some reason, MCV is not available to perform the procedure in an emergency situation, the Commonwealth must provide the financial resources necessary to pay for the procedure if it were done at MCV for a paying customer. This Court will not order the Commonwealth to write a blank check and allow the Children's Hospital in Pittsburgh to fill in any amount they determine to be reasonable.

For these reasons, the Plaintiffs must now make the choices. If the child's condition requires a heart transplant, and MCV is available to perform the procedure, DMAS will not be obligated to pay for the procedure if it is done at another hospital. If MCV is unavailable, or if the child's condition prohibits her being moved to MCV, DMAS must pay up to $114,000.00 for a heart transplant to be performed at the Plaintiffs' choice of hospital.

An appropriate Order shall follow.

---

1. The Court appreciates a parent or parents perceiving for numerous reasons that the better care will be afforded at one hospital rather than another. In the instant case, the Court has reached its own conclusion, supra, solely on the unanimous opinion of medical experts affiliated with each of the hospitals under consideration.