**Tiffany MILLER, by her next friend, DeAnna MILLER, Plaintiff,**

v.

**Gerald WHITBURN, Secretary of the Wisconsin Department of Health and Social Services, Defendant.**

No. 93–C–096–C.

United States District Court, W.D. Wisconsin.

March 24, 1993.

**506**

T. Christopher Kelly, Madison, WI, for Tiffany and DeAnna Miller.

Donald P. Johns, Asst. Atty. Gen., Madison, WI, for Gerald Whitburn.

## OPINION AND ORDER

CRABB, Chief Judge.

This civil case for injunctive and declaratory relief is before the court on defendant's motion to dismiss the case for plaintiff's failure to state a claim on which relief may be granted, Fed.R.Civ.P. 12(b)(6), and on plaintiff's request for a court order enjoining defendant permanently from refusing to fund a liver-bowel transplant operation for plaintiff and declaring plaintiff's rights under the Medicaid Act, Subchapter XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq. Plaintiff maintains that defendant's failure to fund the transplant procedure she needs is a violation of her rights under the Medicaid Act. Plaintiff has advised the court that if her claims for declaratory and injunctive relief are denied, she does not oppose defendant's motion to dismiss. I conclude that the Act does not require the State of Wisconsin to cover the costs of any transplant procedure through its medical assistance program for any program participants, including those under the age of 21, and that because the state has not chosen to cover liver-bowel transplants in its Medicaid plan at this time, plaintiff has no legally enforceable claim to reimbursement of the costs of the operation her treating physicians believe she needs.

Jurisdiction is present. 28 U.S.C. § 1331. Plaintiff is contending that she has been denied a right to which she is entitled under the Medicaid statute. 42 U.S.C. § 1983; *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Her claim is substantial enough to avoid dismissal for lack of jurisdiction, whether or not it succeeds on the merits. *Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir.1986).

The parties do not dispute the following material facts.

### FACTS

Plaintiff Tiffany Miller is a four-year-old child born with a defective lower intestine, a condition referred to as "short bowel syndrome." She has been fed exclusively by catheter. A drainage catheter in her stomach handles all secretions. Exclusive dependence on catheters has compromised her liv-

er, which is functioning at a progressively decreasing rate. The only way to restore her liver function is to replace the liver and her lower intestine through a liver-bowel transplant. Without such a transplant, she is likely to die from liver failure.

Physicians at the University of Pittsburgh Hospital have performed a number of liver-bowel transplants on young children (15 as of January 28, 1993), using an investigational immunosuppression drug known as FK 506 whose manufacturer has not yet approved a protocol for intestinal transplantation at other medical centers. A high percentage of the children operated on at the University of Pittsburgh Hospital are still alive after their surgery and off catheter feedings.

Defendant has denied requests to refer plaintiff to the University of Pittsburgh Hospital for a liver-bowel transplant operation and to reimburse the hospital for the cost of the procedure. In a letter dated September 8, 1992, the Chief Medical Consultant, Bureau of Health Care Financing of the Wisconsin Department of Health and Social Services, wrote to Anthony D'Alessandro, Professor of Surgery, University of Wisconsin—Madison Medical School, advising him that his request to refer plaintiff was denied on the ground that the Wisconsin Medical Assistance Program considers intestinal transplants to be experimental and therefore not reimbursable under Wisconsin's Medicaid program and inviting him to present current scientific data relative to intestinal transplants at the next meeting of the State Medical Society's Medicaid Medical Audit Committee. Dr. D'Alessandro appeared before the January 1993 meeting of the committee but was unable to persuade the committee to change its position that liver-bowel transplant procedures are experimental in nature and should not be covered procedures under Wisconsin's Medicaid plan at the present time.

## OPINION

Medicaid is a cooperative federal-state program intended to provide medical assistance to persons unable to afford medical care. States are not required to develop Medicaid plans; if they do so, however, their plans must comport with a multitude of federal statutory and regulatory requirements. 42 U.S.C. § 1396a. At a minimum, state Medicaid programs must fund seven categories of mandatory medical services in order to qualify for federal funding. 42 U.S.C. § 1396a(a)(10)(A). Among the mandatory services are inpatient and outpatient hospital services, other laboratory and X-ray services, physicians' services and early and periodic screening, diagnostic, and treatment services for persons under age 21, which are referred to generally as EPSDT services. The states retain some discretion to determine the services they provide: one of the purposes of federal appropriations is to enable "each State, *as far as practicable under the conditions in each State,* to furnish medical assistance to the needy [emphasis added]." 42 U.S.C. § 1396.

When plaintiff initiated this lawsuit, she contended that under *Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), state Medicaid plans must fund all necessary medical treatment; that states may refuse requested procedures they consider experimental if they have established an explicit policy of refusing to fund experimental procedures, but that a state's determination of "experimental" is subject to judicial review; and that the standard of review is a de novo determination whether the state's Medicaid plan has excluded non-experimental medical treatment. In opposition, defendant argued that a state's obligation to fund medically necessary procedures for qualifying individuals applies only to services that are covered under its Medicaid plan; that every state has broad discretion in developing standards for determining the extent of Medicaid coverage it will provide so as to meet the needs of the Medicaid population as a whole; and that Congress has made it explicit that the states may decide whether to provide Medicaid coverage for any transplant procedures, 42 U.S.C. § 1396b(i), with the caveat that if a state chooses to cover any or all transplant procedures, it must formulate standards that ensure that coverage will be rational and consistent among members of the eligible group and that the procedures will not be

denied to any eligible person solely because of diagnosis, type of illness or condition.

After hearing the parties' arguments at a hearing on plaintiff's motion for a preliminary injunction, I denied the motion. I found that although plaintiff had shown she would suffer irreparable harm if the injunction was denied, she had failed to show any likelihood of ultimate success on the merits, because she could not show that defendant had violated any provision of the federal Medicaid statute. Congress has left it within the discretion of the states whether to fund particular transplant operations and the State of Wisconsin has made the decision not to fund liver-bowel transplants at this time. Plaintiff did not show that the state's decision was based on impermissible factors such as media or political considerations or the diagnosis, type of illness or condition of the person in need of the transplant. *See* H.R.Rep. No. 100–391(I), *reprinted in* 1987 U.S.C.C.A.N. 2313–1 at 2313–352:

> States may not arbitrarily deny or reduce the amount, duration, or scope of a mandatory service solely because of an individual's diagnosis, type of illness, or condition.... The Committee wishes to clarify that the organ transplant procedures which a State covers, ... must be sufficient in amount, duration, and scope to reasonably achieve their purpose. For example, if a State covers liver transplants for patients with one medical condition but not for patients with another, and if a liver transplant is medically indicated and not experimental with respect to each condition, the State's plan would be out of compliance with the amount, duration, and scope requirement.

I agreed with defendant that the state's decision was non-reviewable, given the discretion left to the states. *See Ellis by Ellis v. Patterson*, 859 F.2d 52, 55 (8th Cir.1988) ("Allowing the states some discretion in the funding of medical procedures is, after all, consistent with the policy behind the Medicaid Act...."). I concluded that plaintiff had failed to show any basis for federal court intervention to require defendant to fund the transplant she needs. On the issue of balance of harms, plaintiff's projected harm is indisputable, but the state's interest is significant as well: it has the responsibility of administering a program that meets the health needs of the entire Medicaid population as fairly and extensively as possible with a limited budget and it has a legitimate concern with the efficacy of the procedures it approves. Finally, I concluded that the public interest in the life and well-being of the plaintiff is as substantial as its interest in a Medicaid program operated for the greatest benefit of all eligible participants.

In support of her request for a permanent injunction and for declaratory relief, plaintiff is focusing her challenge on the provisions of the Early and Periodic Screening, Diagnostic and Treatment Services provisions of the Social Security Act, 42 U.S.C. § 1396d(r). She contends that she has a legally enforceable right under these provisions to any necessary medical care. She argues that § 1396d(r)(5) leaves defendant no discretion to refuse to fund a transplant operation for her because the statute requires the states to provide eligible individuals under 21 certain specific services (screening, vision, dental and hearing) and "[s]uch other necessary health care ... to correct and ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, *whether or not such services are covered under the State plan*" [emphasis added]. Plaintiff is an eligible individual under the age of 21, 42 U.S.C. § 1396d(a)(4)(B); she needs medical procedures to correct a condition from which she suffers; and, she argues, § 1396d(r)(5) entitles her to the corrective medical procedures whether or not they are covered under Wisconsin's Medicaid plan.

Section 1396d was enacted in 1967. *See Bond v. Stanton*, 655 F.2d 766, 767–68 n. 1 (7th Cir.1981). The present version of subsection (r) was added in 1989, as part of the Omnibus Budget Reconciliation Act of 1989. *See* Act of Dec. 19, 1989, P.L. 101–239, § 6402, *reprinted in* 1986 U.S.C.C.A.N. (103 Stat.) 2106. It was unaccompanied by any legislative history that might explain the intended import and scope of subsection (5). The United States Department of Health and Human Services has not promulgated any regulations to implement the new provision.

Subsection (5) contains a cross-reference to subsection (a) of § 1396d, which lists a number of medical services that either must or may be covered under a state Medicaid program. Regulations promulgated in 1984 set out the services that are mandatory under subsection (a). *See* 42 C.F.R. § 441.-56(c). These include services relating to diagnosis and treatment for hearing and vision defects, dental care (including restoration of teeth), and appropriate immunizations. 42 C.F.R. § 441.57 provides that state agencies "*may* provide for any other medical or remedial care specified in Part 440 of this subchapter, even if the agency does not otherwise provide for these services to other recipients or provides for them in a lesser amount, duration, or scope [emphasis added]."

Section 1396b(i) was enacted in 1986. *See* Act of April 7, 1986, Pub.L. No. 99–272, § 9507, 1986 U.S.C.C.A.N. (100 Stat.) 82, 210. It provides, in pertinent part:

> Payment under the preceding provisions of this section shall not be made—
>
> > (1) for organ transplant procedures unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that—
> >
> > > (A) similarly situated individuals are treated alike; and
> > >
> > > (B) any restriction, on the facilities or practitioners which may provide such procedures, is consistent with the accessibility of high quality care to individuals eligible for the procedures under the State plan; ...

The legislative history makes it clear that this provision leaves the states the option not to cover any transplants. *See, e.g.,* H.R.Rep. No. 100–391(I), *reprinted in* 1987 U.S.C.C.A.N. 2313–351–352:

> To assure that State coverage decisions for organ transplants are based on clear principles consistently applied, and not on political or media considerations, section 9507 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), P.L. 99–272, requires that *a State which covers organ transplant procedures* set forth under its Medicaid plan written standards respecting the coverage of such procedures [emphasis added].

Under the State of Wisconsin Medicaid plan, certain services and procedures are "covered"; others are "uncovered" and still others are covered with prior authorization. Among those that are treated as uncovered are procedures that are considered experimental. *See* Wis.Admin.Code § HSS 107.-03(4). The department uses a medical consulting committee to help it to determine what procedures fall into the category of "experimental." Section HSS 107.035(2) sets forth the factors that the department is to take into consideration when determining whether a particular service is experimental or whether it is a proven and effective treatment for the condition for which it is intended:

> (a) The current and historical judgment of the medical community as evidenced by medical research, studies, journals or treatises;
>
> (b) The extent to which medicare and private health insurers recognize and provide coverage for the service;
>
> (c) The current judgment of experts and specialists in the medical specialty area or areas in which the service is applicable or used; and
>
> (d) The judgment of the [Medicaid] medical audit committee of the state medical society of Wisconsin or the judgment of any other committee which may be under contract with the department to perform health care services review....

Wisconsin treats organ transplants like any other medical procedure: its plan provides coverage for organ transplants that are not considered experimental in nature. In determining which organ transplants it will cover, the state applies the provisions of § HSS 107.035(2). Thus, it has made the implicit determination that proven safety and effectiveness will be the condition for funding transplants.

Plaintiff contends that Wisconsin no longer retains the discretion to choose not to cover services that are necessary to correct a defect in a person under 21. She argues that in adding subsection (5) to the EPSDT (Early and Periodic Screening, Diagnostic and

Treatment) provisions of the Medicaid Act, § 1396d(r), Congress intended to eliminate the states' discretion over the non-mandatory services they choose to cover in their plans for younger persons and that the removal of the states' discretion is this respect applies even to organ transplants, which Congress had specified would be optional with the states. In support of her position, plaintiff cites the recent case of *Pereira v. Kozlowski,* 805 F.Supp. 361 (E.D.Va.1992), in which the district court held that the EPSDT provisions were unambiguous and required the states to fund any medically necessary treatment for persons under age 21, regardless whether the state's plan covered such treatment for any persons. The court did not address the medical necessity of the heart transplant operation sought for the three-year-old plaintiff or consider whether the operation was an experimental procedure because the defendant commonwealth official did not contest plaintiff's need for the operation or contend that the procedure was experimental. The commonwealth argued that it was Congress's intent to allow states the prerogative to decide whether to allocate their scarce resources to include coverage for organ transplants and that Virginia should have the discretion to develop its own policy in this area of extraordinary expense. *Id.* at 362–63. Apparently conceding the validity of this approach for Medicaid recipients over the age of 21, the court rejected it for younger recipients. The court read § 1396d(r)(5) as removing the states' discretion to deny *any* medically necessary treatment for a patient under age 21. It found the language unambiguous in this respect and gave weight also to the fact that § 1396d(r)(5) was passed two years after Congress had enacted § 1396b(i).

■ I am not convinced by the court's analysis in *Pereira.* It is true that the usual rule is that a court's inquiry into the meaning of a legislative provision is at an end when the language is unambiguous. *See, e.g., Norfolk & Western v. American Train Dispatchers,* 499 U.S. 117, ——, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991). In this instance, however, the "unambiguous" language of § 1396d(r)(5) is in direct conflict with another provision of the Medicaid Act (the organ

transplant provisions of § 1396b(i)) and with the policy of state flexibility embodied in the Act. In such circumstances a court should not infer a congressional intention to make a major change in Medicaid law in the absence of a clear indication of such intent. *Sea-Land Serv., Inc. v. United States,* 874 F.2d 169, 172–73 (3d Cir.1989).

■ Both parties concede that no legislative history exists that would help to explain the intended scope of subsection (r)(5). The House Report contains no mention of subsection (5); it is limited to a discussion of subsections (1) through (4). *See* H.R.Rep. No. 101–247, 101st Cong., 1st Sess. 398–401, *reprinted in* 1989 U.S.C.C.A.N. 1906, 2124–27. This history emphasizes the congressional concern with ensuring that preventive health services are available to all Medicaid-eligible children and that the services include four distinct elements: screening, vision, dental and hearing services, all of which "must be covered for children, even if, under the State Medicaid plan, they are not offered to other groups of program beneficiaries." *Id.* 1989 U.S.C.C.A.N. at 2124–25. This discussion implies no intent to make major changes in the states' authority to deny coverage for procedures that the states deem experimental, obsolete, inaccurate, imprudent or ineffectual.

As noted earlier, the Secretary of Health and Human Services has not enacted regulations amending 42 C.F.R. §§ 441.56(c) or 441.57 to extend to services beyond those relating to hearing, vision, dental care and immunizations. Plaintiff has not adduced any communications from the department advising states that the EPSDT provisions now mandate additional procedures, including transplants. The Secretary's failure to propose new regulations or to advise the state of changes in the provisions suggests that she does not read subsection (5) as broadly as the court did in *Pereira,* 805 F.Supp. 361.

It is possible that Congress would enact legislation removing the states' discretion to fund transplants that are needed by persons under 21. It is improbable that it would do so without making the intent explicit in the statute or, at the very least, highlighting the

proposed change in a legislative report of some kind. Its failure to do so suggests that it did not have such far reaching intent when it enacted § 1396d(r)(5). *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 602, 100 S.Ct. 1889, 1902, 64 L.Ed.2d 525 (1980) (Rehnquist, J., dissenting from the Court's determination that the phrase "any other final action" in § 307(b)(1) of the Clean Air Act enlarged the jurisdiction of the courts of appeals to include review of cases based on an administrative record reflecting less than notice and an opportunity for hearing and noting the legislative history gives no indication that Congress intended to effect a major expansion of the original limited grant of exclusive jurisdiction to federal courts of appeals): "In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night."

I am persuaded that Congress did not intend that § 1396d(r)(5) would make transplant procedures mandatory for eligible Medicaid recipients under 21 by superseding the states' statutory authority to decide whether they would cover the costs of organ transplants for any eligible persons.

 Plaintiff's second contention is that defendant's decision denying coverage to liver-bowel transplants is judicially reviewable and substantively erroneous. Plaintiff argues that the decision is invalid procedurally because it was not made according to objective written standards, as required by the federal Medicaid Act, § 1396b(i), or according to the state's own procedures set out in Wis.Admin.Code § HSS 107.03(4) and that it is wrong on the merits because strong evidence exists to prove that the liver-bowel transplants performed at the University of Pittsburgh Hospital are safe and effective.

In deciding whether a statute creates a federal right that is enforceable under 42 U.S.C. § 1983 and thus subjects the state action to federal judicial review, a court must determine whether " 'the provision in question was intend[ed] to benefit the putative plaintiff.' " *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). If it does, then the provision creates an enforceable right unless (2) it "reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation on the governmental unit," *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (quoting *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981)), or unless (3) the plaintiff's interest is so " 'vague and amorphous' " as to be " 'beyond the competence of the judiciary to enforce.' " *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (quoting *Golden State*, 493 U.S. at 106, 110 S.Ct. at 448).

Section 1396b(i) contains no provision that could be said to create a right in a putative plaintiff to require a state to provide coverage for a particular transplant procedure. It requires the states that decide to cover transplants in their Medicaid plans to have written standards respecting the coverage of such procedures and it requires that the standards ensure fair treatment to similarly situated individuals. The latter requirement appears to create a right for an eligible Medicaid recipient to sue if he or she is denied a procedure that the state has decided to cover in its plan if the denial is based on the recipient's diagnosis, type of illness or condition or if the state makes the procedures available on the basis of media or political considerations. However, nothing in the statute suggests a congressional expectation that a Medicaid recipient has a judicially enforceable right to require a state to cover a particular transplant procedure it has not chosen to cover. Neither the statute nor the legislative history contains any factors that a state might consider in making the coverage decision. *Cf. Wilder*, 496 U.S. at 519 n. 17, 110 S.Ct. at 2522 n. 17 (statute sets forth items a state must consider in determining methods for calculating rates related reasonably to the costs of an efficient hospital). Section 1396b(i) is completely silent as to how states might decide to cover organ transplant procedures, as compared with how they are to make such procedures available if

and when they are incorporated into their Medicaid plans.

In the face of this silence, I conclude that § 1396b(i) does not give plaintiff a right to require the states to cover certain transplant procedures they have chosen not to cover. The lack of any explanation of the standards to be incorporated into the plan makes it plain that Congress did not intend to allow putative plaintiffs to sue to enforce this requirement; it also makes it impossible for the courts to do so. The requirement is far too vague and amorphous to be judicially enforceable. Respectfully, I disagree with the holding in *Meusberger v. Palmer*, 900 F.2d 1280, 1283 (8th Cir.1990), that in requiring the states to adopt written criteria to ensure fairness in the provision of organ transplants, Congress intended that the states adopt objective criteria for choosing which if any transplants to cover and that the criteria would be subject to judicial scrutiny. This intent is not discernible from either the statute or its legislative history and thus conflicts with the usual requirement that the states understand the terms of the agreements under which they enter into federal-state spending programs.

"The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.' There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst* [451 U.S.] at 17 [101 S.Ct. at 1540]. (citations and footnote omitted."

*Suter v. Artist M.*, ─── U.S. ───, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

■ Wisconsin has written standards respecting the coverage of transplant procedures. Although no provision of the state plan is addressed specifically to § 1396b(i), the state covers organ transplants in its Medicaid plan subject to the same requirements it applies to any medical procedure: the procedure must be shown to be safe and effective. Wis.Admin.Code § HSS 107.-035(2), quoted earlier, sets out the factors the department takes into consideration in deciding safety and effectiveness. Once a particular transplant procedure is approved for coverage, it is treated like any other covered procedure for which prior authorization is required. (At the present time, Wisconsin covers six organ transplant procedures: heart, pancreas, bone marrow, liver, heart-lung and lung.) As implemented, the state plan meets the substantive requirement of the law: it does not discriminate among similarly situated persons on the basis of political or media considerations or deny organ transplants to any person because of that person's diagnosis, condition or type of illness. If and when the medical audit committee decides that liver-bowel transplants are safe and effective and not experimental, the cost of such transplants will be covered for all eligible persons.

Considered only in the context of this case and this plaintiff, the state's decision not to pay for liver-bowel transplant procedures has the appearance of denying a lifeline to a drowning person, since no one disputes that plaintiff will die without the transplant procedure. Reduced to these terms, it seems not only heartless but plainly wrong to deny the lifeline, whatever its monetary cost and whatever the risks and danger to the plaintiff. But the question that this court has been asked to decide is not whether it would be a good thing for plaintiff to have the transplant her doctors want her to have, but whether federal law gives her an enforceable right to have the state provide such a procedure. I conclude that federal law does not give her that right.

### ORDER

IT IS ORDERED that plaintiff's request for injunctive and declaratory relief is DENIED and that defendant's motion to dismiss is GRANTED. The clerk of court is directed to enter judgment for defendant and to close the case.